CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAR 0 1 2006

JOHN F. CORCORAN, CLERK
BY:
 DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

POLY USA, INC.,                    )
                                   )        Civil Action No.: 5:05-CV-00031
    Plaintiff,            )
                                   )
v.                                 )        **MEMORANDUM OPINION**
                                   )
TREX COMPANY, INC.,                )
                                   )
                                   )        By: Samuel G. Wilson
    Defendant.            )        United States District Judge
                                   )

Plaintiff Poly USA, Inc. (Poly), filed this action against the defendant, Trex Company,

Inc. (Trex), alleging fraud and unjust enrichment. Poly claims that the parties reached an oral

settlement agreement on May 22, 2004, and that the defendant's representative, Bradford Felix,

emailed Poly's president, Trifon Beladakis, a copy of the settlement agreement, which Beladakis

later signed. Poly has filed a motion to enforce that settlement agreement. Trex argues that the

parties did not reach any settlement agreement and that the emailed proposal was merely a draft

and part of ongoing negotiations to continue the parties' business relationship. Having

conducted a hearing on February 6, 2006, and having reviewed additional briefing, the court

finds that the communications between Poly and Trex did not constitute an enforceable

settlement agreement and denies Poly's motion.

## I.

Beginning in July 2003, Poly sold Trex over one million pounds of raw plastic material,

which Trex utilized in its manufacturing operation; however, the business relationship ended in

October 2003. On May 14, 2004, Poly filed this action against Trex, alleging that Trex acted

fraudulently in the course of its business dealings with Poly. Felix, the Material and National

Accounts Manager for Trex, visited Poly's president, Beladakis, on May 22, 2004, and they discussed the pending lawsuit and the possibility of a future business relationship between Poly and Trex. At the hearing, Beladakis testified that the parties reached an oral settlement agreement at the meeting: Trex would pay Poly either $92,500 or $95,000, depending on whether Trex would be amenable to increasing the settlement amount to $95,000, and the parties would continue doing business together. Beladakis also testified that he and Felix sealed the agreement with a handshake. However, Felix testified that they did not reach an agreement but merely discussed possibilities for resolution of the lawsuit and the creation of a long-term business relationship; though, he agreed that the discussion ended with a handshake.

A few days later, Beladakis claims that Felix called and said that he had had a lengthy meeting with his superiors and that they had agreed to pay Poly $95,000. On May 26, 2004, Poly resumed business with Trex,[1] and on May 28, 2004, Felix emailed Beladakis the alleged settlement agreement. Felix sent the document as an attachment to an email that stated: "Read and give me a call." Trex did not sign the emailed document, and the document itself states that "[u]pon our receipt of a copy of this letter countersigned by you, we will send you a check in the amount of $95,000." Beladakis testified that he understood that Felix would send the final agreement by Federal Express (FedEx), though Beladakis did not, at any time, receive such a package, nor did Beladakis email or call Felix to inquire about the FedEx package. Beladakis testified that he did not inquire about the status of the FedEx package because he knew that Felix had to go through "channels." Felix testified that the emailed document was merely a draft and part of the ongoing negotiations between Poly and Trex. In addition, Beladakis replied to Felix's

---

[1]Poly terminated its renewed business relationship with Trex in June 2004.

2

email containing the attached document; however, his reply did not mention the alleged settlement.

In a June 1, 2004, email to Beladakis, Felix asked Beladakis if he was "ready to sign the agreement" and noted that Poly's attorney had contacted Trex's attorney, asking to be "involved." Felix also stated that he would have Trex's attorney "add a line to the letter stating that you will have your lawyer drop the lawsuit . . . will then have it fedex'ed to you for your signature." On that same day, Felix sent a second email to Beladakis and asked him "to send me [Felix] an e-mail stating that you [Beladakis] want to work with us without your attorny [sic] for us to move forward . . . jsut [sic] keeps us out of trouble with him." Felix testified at the hearing that Beladakis called and said that he would continue to work with Felix without Poly's attorney.

On June 14, 2004, Felix claims that he called Beladakis and told him that Trex no longer wanted to do business with Poly, ending all negotiations.[2] On this same date, Beladakis signed the emailed agreement, and he testified that he sent the signed agreement to both his attorney and Trex. Though Beladakis had been waiting on a FedEx package with the formal agreement from Felix, he testified that he signed the emailed agreement on June 14 because the FedEx package had not arrived and Poly's attorney had advised him to do so.

Trex claims that it did not receive a copy of the signed agreement until July 6, 2004, when Poly's attorney faxed the signed agreement with a letter requesting immediate payment. On July 8, 2004, Trex faxed a letter to Poly's attorney stating that the emailed May 28, 2004, proposal was "not intended as a firm offer capable of being accepted." On December 1, 2004,

---

[2]At the hearing, Beladakis testified that he did not remember this phone call; however, he did recall that after the lawyers talked that Felix called and said there was no agreement.

3

Poly filed this motion to enforce the settlement agreement.

## II.

"Under governing Virginia law, settlement agreements are treated as contracts subject to the general principles of contract interpretation."[3] "As with all contractual instruments, the party asserting the existence of [a settlement] agreement bears the burden of persuasion to prove its existence." Baldwin v. Baldwin, 603 S.E.2d 172, 174, n.1 (Va. App. 2004). Though oral settlement agreements are enforceable in Virginia, Snyder-Falkinham v. Stockburger, 457 S.E.2d 36, 41 (1995), the intention to reduce an agreement into writing raises the presumption "that (the parties) did not intend the previous negotiations to amount to an agreement." Valjar, Inc. V. Maritime Terminals, Inc., 265 S.E.2d 734, 736 n.* (Va. 1980) (quoting Boisseau v. Fuller, 30 S.E. 457 (1898)). Still, the issue of whether a settlement agreement is binding is "ultimately resolved by a 'determination of the intention of the parties, as objectively manifested.'" Montagna v. Holiday Inns, Inc., 269 S.E.2d 838, 844 (1980) (citations omitted).

It is apparent that, after the May 22, 2004, meeting, Felix and Beladakis both understood

---

[3]Poly filed this action in the Northern District of Illinois; however, Trex filed a motion to dismiss based on improper venue. Because Trex's purchase order contained a forum selection clause that stated any controversy "arising out of the contract herein shall be determined by the Courts of the Commonwealth of Virginia," Trex argued that the proper venue was the Western District of Virginia. The forum selection clause also stated that the "contract between the parties hereto shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia and shall be deemed entered into at Buyer's place of business." The Northern District of Illinois did not dismiss the case but instead transferred it to this court. See Paper Exp., Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 757 (7th Cir. 1992) ("Like any contract provision, a forum-selection clause will be enforced unless enforcement would be unreasonable or unjust or the provision was procured by fraud or overreaching."); Bryant Elec. Co., Inc. v. City of Fredericksburg, 762 F.2d 1192, 1196 (4th Cir. 1985) (stating that both the Fourth Circuit and the Supreme Court have "addressed the validity of forum selection clauses, holding such clauses to be enforceable if reasonable"). Thus, the court finds that Virginia law is applicable to this controversy.

4

that further action was required before their agreement would become final and binding. At all times, both parties understood that Felix would send the final agreement in a FedEx package; however, that package never arrived. Indeed, Beladakis conceded at the hearing that he knew that Felix had to go through "channels" before sending the FedEx package. Though Poly argues that the May 28, 2004, emailed document memorializes the terms of the alleged settlement agreement and confirms its existence, Trex did not sign the document, and the document itself required a countersignature from Poly.[4] Moreover, as of June 1, 2004, Felix and Beladakis were still discussing possible additions to the May 28 emailed document, and again, Felix informed Beladakis that he would "fedex[] [the final agreement] to you [Beladakis] for your signature." Because both parties understood that Felix would send a FedEx package with the final agreement and continued to discuss possible terms after the draft agreement was emailed, the court finds that Beladakis and Felix did not intend to be bound by the May 22 discussion and, thus, that the parties did not enter into an enforceable settlement agreement. Accordingly, the court denies Poly's motion to enforce the settlement agreement.

## III.

For the foregoing reasons, the court denies Poly's motion to enforce the settlement

---

[4]In its initial supporting brief, Poly claimed that when Beladakis signed the May 28, 2004, emailed document that it became binding on both parties because Trex "signed" the document with an electronic signature by sending it through a Trex email account. See 15 U.S.C. § 7006 ("The term 'electronic signature' means an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record."). Poly did not pursue this argument at the hearing nor in its additional briefing. Nevertheless, the court finds the use of a Trex email account to send an email does not necessarily constitute an electronic signature under 15 U.S.C. § 7006 and, moreover, that Trex did not intend to electronically sign the emailed document by sending it from a Trex email account. Thus, the May 28 emailed document was not binding.

5

agreement.

**ENTER**:  This _1st_ day of March 2006.

_____
UNITED STATES DISTRICT JUDGE

6